The court, therefore, is of the opinion that the matters and facts in issue in this case are res judicata, and plaintiffs herein are forever barred as against the defendants; and plaintiffs herein are estopped from proceeding further in the case at bar, being Case No. 124538.

*Judgment accordingly.*

MAURER ET AL. *v.* AUSTIN SQUARE, INC., ET AL.*

[Cite as Maurer v. Austin Square, Inc., 9 Ohio Misc. 49.]

*Affirmed by the Court of Appeals February 15, 1966, 6 Ohio App. 2d 41. Motion to certify to Supreme Court overruled October 5, 1966.

(No. 252351—Decided August 13, 1965.)

Common Pleas Court of Summit County.

*Messrs. Slabaugh, Walker, Pflueger, Roderick & Myers,* for plaintiffs.
*Messrs. Roetzel, Hunsicker & Michaels,* for defendants.

LAMNECK, J., sitting by assignment. The three plaintiffs in this action on behalf of themselves and others similarly situated seek to perpetually restrain the defendants, Austin Square, Inc., and The Bernard Construction Co., from violating certain provisions of the Comprehensive Zoning Ordinance of the city of Barberton, Ohio, and from the construction or erection of any commercial buildings or structures constituting a "shopping center" on approximately 25 acres of land located at the northwest corner of Fifth Street and Robinson Avenue in the city of Barberton, Ohio. Austin Square, Inc., owns the land, and The Bernard Construction Company was employed by the owner to do the construction work which was under way at the time of the trial. The owner offered evidence to show that it had expended $300,000 from May 21, 1965, up to July 26, 1965, on the project.

The undisputed evidence relative to situations and proceedings prior to the institution of the present action discloses the following:

That the Bernard Construction filed an application for a building permit with the Building Inspector of the city of Barberton, Ohio, on June 12, 1963; that the Planning Commission of the city of Barberton rejected this application on July 24, 1963; and that the Zoning Board of Appeals sustained this rejection on August 15, 1963.

The undisputed evidence further discloses that an appeal from the action of the Zoning Board of Appeals was taken to the Court of Common Pleas of Summit County, Ohio, on August 23, 1963; known as Case No. 241,422 and entitled "In the Matter of the Appeal of the Bernard Construction Company, Barberton, Ohio, from an order of the Board of Zoning Appeals of the city of Barberton, Ohio"; that on January 14, 1964, the Court of Common Pleas held in effect that the planning commission did not follow the provisions of the zoning ordinance in rejecting the application and remanded the matter to the planning commission to reconsider the application for a building permit and to hold further hearings; that on January 27, 1964, the Court of Common Pleas refused to consider "motion to stay" and "motion for new trial" for the reason that the rules of the court had not been followed in the filing thereof; that on January 28, 1964, a notice of appeal to the Court of Appeals was filed; and that on May 29, 1964, this appeal was dismissed for the reason that the question involved was no longer moot. This dismissal no doubt resulted from the action of the Department of Buildings of the city of Barberton in issuing a Building permit to Bernard Construction Co. (Austin Square, Inc.) on January 30, 1964, or to Austin Square, Inc., dated May 21, 1965.

Three building permits for the erection of structures on this land were issued in this case by the Department of Buildings of the city of Barberton, Ohio, as follows:

(a) No. B3510 dated January 30, 1964, for a shopping center to Bernard Const. Co. (Austin Square, Inc.) to cost $2,000,000.00.

(b) No. B4373 dated May 21, 1965, to "Austin Square, Inc.," for a revision to cost $30,000.00.

(c) No. B4519 dated July 26, 1965 (subsequent to the filing of this action) to Austin Square, Inc., for a shopping center revision.

Building Permit No. 4519 reads as follows:

"BUILDING PERMIT

City of Barberton, Ohio        B 4519

Fee $2,182.95
(Previously paid $1,618.00)

Owner        Austin Square, Inc.        Date    July 26, 1965
            Construction at

Street  E. Tusc. Ave. - Robinson Ave.  No.  90 Lot No.  unalt
In Fire Dist ...... Cubic Content  4,850,730  Sq. Ft.  210,629
Stories High  1  Material Built of  Structural Steel & Masonry
Addition ........ New Building  Shopping Center - Revision
Plumbing ........... Sign ......... Wrecking ............
Valuation  $2,250,000.00  Remodeling ....................
Contract  Bernard Const. Co. 90 E. Tusc. Ave. - Ralph L.
                    Bernard - officer in charge.

Remarks: This Permit is Issued Subject to all Rules, Regulations and ordinances Governing the Building Department and Zoning of the City of Barberton and the State of Ohio.

Joseph S. Edwards    Inspector    Helen Mihal    Clerk
............................................................
$570.95 This sum must be paid to the  Revised Permit of B4373
Treasurer to validate the above ap-        —No Fee"
plication, License or Permit. (Previously paid)

This action is brought under the provisions of Section 713.13, Revised Code, which reads as follows:

"No person shall erect, construct, alter, repair, or maintain any building or structure or use any land in violation of any zoning ordinance or regulation enacted pursuant to Sections 713.06 to 713.12, inclusive, Revised Code, or Section 3 of Article XVIII, Ohio Constitution. In the event of any such violation, or imminent threat thereof, the municipal corporation or the owner of any contiguous or neighboring property who would be especially damaged by such violation, in addition

to any other remedies provided by law, may institute a suit for injunction to prevent or terminate such violation."

It is not disputed that the three plaintiffs and the others similarly situated are owners of neighboring property to the buildings under construction, and therefore the court concludes they are authorized by law to bring the instant action. The court also finds that the proceedings had in case No. 241,422 (supra) in this court and the various findings therein are not determinative of the issues in this case.

The plaintiffs contend that the land in question in this case is zoned for "planned local business" under the Comprehensive Zoning Ordinance of the city of Barberton, Ohio, known as Zoning Ordinance No. 129-A-1960 enacted on July 18, 1960, and that the planned construction of the defendants would cause them to be "especially damaged" and that such planned construction is in violation of Section 1163.01, subsection 4; Sections 1163.05, subsection 1b and Section 1163.20, subsection 1 of said Ordinance.

Permit No. 4519 issued on July 26, 1965, together with the previous permits, authorized Austin Square, Inc., to erect a one story structural steel and masonry building on the land in question to be used as a shopping center with a cubical content of 4,850,730 cubic feet and a square footage of 210,629 square feet at a cost of $2,250,000.00. The plans call for a building all under one roof with 35 separate retail units or outlets with access to each from common corridors within doors, and a 1500 car parking capacity. Eleven units have already been leased including 82,420 square feet to the M. O'Neill Co., 15,000 square feet to Kroger's and 12,000 square feet to Scott's Stores.

The defendants admit that the land in question is located in a business district designated as a "planned local business" district under said ordinance. The validity of the ordinance is not questioned.

Chapter 1163 of said ordinance covers "business districts." The following business classifications are established under Section 1155.03 of said ordinance: parking, office building, local business, general business, planned office building, planned local business and planned general business.

In establishing business districts, it was the intent of said ordinance as stated in subsection 4 of Section 1163.01 "to pro-

vide local business districts in close proximity and serving the ordinary shopping needs of the immediate neighborhood, and which do not attract large volumes of traffic'' and as stated in subsection 5, to ''provide general business districts which require larger storage space, are open in evenings and generate large volumes of traffic, serving the extraordinary needs of the entire community.''

Under Section 1163.05 of said ordinance, it is permitted in local business districts to make retail sales of groceries and allied items, drugs, wearing apparel, hardware, and variety store items. It also permits the operation of beauty and barber shops, limited laundry and dry cleaning shops, repair shops, auto service stations, parking lots, and garden nursery items and supplies, restaurants and ice cream parlors.

The operation of motels, mortuaries, and night clubs are specifically prohibited.

The following operations not specifically mentioned under local business district operations are specifically provided for under general business district uses:

Frozen food lockers, retail sale of alcoholic beverages, and the operation of *general merchandise and department stores*, automotive sales and services, garages, bus and taxi stations, hotels, amusement and recreational services, carnivals and fairs.

With a few minor exceptions there is very little retail business conducted in this area at the present time and it is predominantly residential.

To the east of the defendants' land in question is a tract of vacant land zoned for professional and office buildings. To the south is a similar vacant tract zoned for multiple family residences. To the south of this tract there is a zoned tract upon which multiple family residences have been erected. Fifth Street abuts this tract on the west, and to the west of Fifth Street is a residential area. Robinson Ave. adjoins the defendants' land on the north and to the north of Robinson Ave. is a residential area.

The defendants contend that since they have a building permit from the proper authorities to erect the structure in question, this action to enjoin the completion or use of said

structure now is premature. Section 713.13, Revised Code, specifically provides that "no person shall * * * use any land in violation of any zoning ordinance * * *." "In the event of any such violation or imminent threat thereof," an injunction suit may be instituted. The language of the statute clearly indicates that an intended or avowed use which if put into effect would be violative of the zoning ordinance may be enjoined at any time so long as there is an imminent threat of such violation.

Under the subsection 4 of Section 1163.01 of the Ordinance, the purpose of establishing local business districts is to serve the "shopping needs of the *immediate neighborhood*, and which do not attract large volumes of traffic," and under subsection 1b of Section 1163.05 of the Ordinance, retail sales in a local business district must be "conducted wholly within enclosed buildings and devoted to supplying *neighborhood needs*." (Emphasis added.)

Subsection 1 of Section 1163.20 of the Ordinance provides that in case of a planned local business district, the same regulations covering local business districts shall apply and in addition thereto there are limitations as to malls, planted islands, percentage of land to be used for buildings and parking; and minimum set back dimensions for parking and buildings.

What do the terms "shopping needs of the immediate neighborhood" and "devoted to supplying neighborhood needs" as used in the ordinance mean?

These terms must be given their intended meaning in construing the ordinance in question. Otherwise there would be no reason for inserting them in the ordinance. It is obvious that they are terms of limitation.

Merriman Webster's latest 1964 dictionary defines "neighborhood" as "a number of people forming a loosely cohesive community within a larger unit (as a city, town) and living close or fairly close together in more or less familiar association with each other within a relatively small section or district of usually somewhat indefinite boundary and usually having some common or fairly common identifying feature (as an approximate equality of economic conditions, similar social status, similar national origins or religions, similar interests) and

usually some degree of self-sufficiency as a group (as to schools, churches, libraries, business establishments, cultural and recreational facilities)."

Black's Law Dictionary defines "neighborhood" as a place near or adjoining or surrounding district; a more immediate vicinity.

Funk & Wagnall's Collegiate Dictionary defines "neighborhood" as a comparatively small populated region or district possessing some quality or characteristic that distinguishes it from other areas. Funk & Wagnalls also defines "immediate neighborhood" as an area separated by no appreciable space.

In *Early* v. *Leatherman*, 100 Ohio App. 448, 137 N. E. 2d 287, the word "neighboring" was defined as being near, not distant, in the vicinity of. "Immediate" has also been defined as "very close."

In *City of Scranton* v. *Silas et al.*, 393 Pa. 10, 142 Atl. 2d 24, the court construed a zoning ordinance which provided that no building, structure or premises in the "B" zone shall be used except for "retail stores for the sale of food products, wearing apparel, drugs, confectionery, tobacco and general merchandise for local neighborhood use."

The court held that under such a provision, the ordinance writers intended to control and limit the size and volume of the operation of the business to those required in the neighborhood and did not contemplate a large scale merchandising establishment.

This court therefore is of the opinion that the word "neighborhood" as used in the ordinance in question means areas or regions near, surrounding or in close proximity to a particular place and the word "immediate" means very close.

A retail business structure, commonly called a "shopping center" with thirty-five separate units or outlets, with 210,269 square feet of floor space, a cubical content of 4,850,730 cubic feet, and parking facilities for 1500 automobiles costing $2,-250,000.00 and according to the defendant's advance advertiseing that it would service the city of Barberton and people within a radius of five miles, contemplates more than serving the retail trade of the "neighborhood" or of the "immediate neighborhood" in which it is located. It is a business which is permitted in a "general business" district under the ordinance in

question as provided in subsection 5 of Section 1163.01 and subsection 1b of Section 1163.06 of the Ordinance. Such a district is created under the ordinance for retail business and services which *"generate large volumes of traffic, serving the extraordinary needs of the entire community"* and "devoted to supplying all community needs." (Emphasis added.)

Section 1155.02 of the Ordinance provides that "any use not positively permitted, even though defined herein shall be prohibited unless approved in accordance with the standards set forth herein as a similar use, or an accessory use, or unless the code is amended."

It is clear from the evidence that it is planned for "O'-Neil's" to have a branch department store in this structure. It will occupy one-third of the square footage of the building. Under Section 1163.05 of the Zoning Code, department stores are not mentioned as a permitted use in local business districts. A department store is specifically permitted as a general business use under Section 1163.06 of the Zoning Code. What is not included is excluded under Section 1155.02 of the Ordinance hereinbefore cited.

The court is of the opinion that the issuance of a permit to construct the building in question as now planned as an operation permitted in a "planned local business district" is contrary to and in violation of the zoning ordinance in question.

There is evidence in this case to the effect that the three plaintiffs and approximately one hundred fifty others who are claimed to be similarly situated, would suffer especial damage to their residence properties if the defendants are permitted to use the land in question as contemplated in that their individual properties would be depreciated in value from 10 to 25%. The court is of the opinion that the contemplated construction and operation would "attract large volumes of traffic"; bring other undesirable features to the area and would make the "neighborhood" a less desirable place in which to live and that by reason thereof certain home owners, including the three plaintiffs would suffer especial damages in having their respective residences depreciated in value.

Section 1187.01 of the Ordinance in question reads as follows:

"All public officials of the city of Barberton, vested with

the duty and authority to issue legal documents, shall not issue permits or certificates for any building or use that would result in conflict with provisions of this code. However, should such a permit or certificate in conflict with the provisions of this code be issued, it shall be deemed null and void, unless it would operate to the prejudice of an owner who has acted in good faith in reliance thereon.''

For the reasons set forth in this opinion and by virtue of the foregoing provision of the ordinance, the court finds that the three building permits in question are null and void.

The court further finds that Permit No. B3510, dated January 30, 1964, was issued to the contractor and not the owner; that the first permit issued to the owner, No. B4373 was dated May 21, 1965, and that construction began on or after May 21, 1965, and that this action was filed on June 25, 1965.

For this reason, and from the other facts and circumstances surrounding this case, the court finds that a permanent injunction in this case would not operate to the bona fide prejudice of the owners.

*Judgment accordingly.*